IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN AND
FOR LEON COUNTY, FLORIDA

**SHANTE D STARKS,**

    **Plaintiff,**

v.

**FLORIDA DEPARTMENT OF HIGHWAY
SAFETY AND MOTOR VEHICLES,**

    **Defendant.**

_____/

CASE NO.: 22-CA-
FLA BAR NO.: 0739685

**RECEIVED**

APR 13 2022

Dept. of Highway Safety & Motor Vehicles
Office of General Counsel - Tallahassee

## COMPLAINT

Plaintiff, SHANTE D STARKS, hereby sues Defendant, FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, and alleges:

### NATURE OF THE ACTION

1. This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes. This action is also brought under the Rehabilitation Act, codified at 29 U.S.C. §794 et seq., 42 U.S.C. §1981a and the Family and Medical Leave Act (FMLA) of 1993, codified at 29 U.S.C. §§2612, 2624.

2. This action involves claims which are, individually, in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interest.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, SHANTE D STARKS, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her, and she was retaliated against after reporting Defendant's unlawful employment practices.

4. At all times pertinent hereto, Defendant, FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff began her employment with Defendant on or about January 2015 and held the position of Compliance Officer at the time of her constructive termination on December 29, 2019.

7. Despite her stellar work performance during her employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her and because she reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Priscilla Brown and Kim Godwin.

9. In 2016, Plaintiff requested FMLA leave following the discovering of a medical condition afflicting her daughter. Specifically, her daughter was diagnosed with Febrile Seizures, a condition where young children are highly susceptible to seizures if they contract a fever from colds, flus, or other illnesses that raise body temperature.

10. Defendant granted Plaintiff's FMLA Leave each year until 2019. The specific terms of Plaintiff's leave included her ability to take leave when her daughter was sick.

2

11. It is well known that the early years of a child's development often involve repeated incidence of colds and the flu given their developing immune systems and exposure to other similarly aged children in school. Plaintiff's child was no different and would get a cold or flu once a month or once every two months.

12. The length of Plaintiff's leave to care for her child while she was sick ranged from 2-3 days depending on how well her child would recover.

13. Plaintiff's child had Febrile seizures at least one or twice a month between the period of 2016 to 2019. The severity of the febrile seizure varied based on the cold and in some instances the seizures would last several minutes. These seizures would effectively paralyze Plaintiff's daughter and cause her to convulse. Not all of the seizures Plaintiff's daughter experienced were the same nor did they all last the exact same time.

14. Between 2016 and 2019, Plaintiff's daughter's age ranged from two to five (2 – 5) years of age.

15. During the course of a cold, Plaintiff's child's Febrile Seizures could occur intermittently over a course of days or multiple times per day. The specific reason Plaintiff needed FMLA leave when her child was sick was because Plaintiff did not have alternate caregivers for her child when she was away from school and because there was always the possibility that the febrile seizures would longer than 15 minutes requiring a trip to the emergency room. Plaintiff would generally use FMLA leave 2-3 days when Plaintiff's child would get a cold.

16. In August 2019, Plaintiff attempted to renew her FMLA Leave and her previous accommodation was denied by Brown and Godwin.

17. Plaintiff's child was still suffering from Febrile Seizures when she got sick. Defendant instead made it a condition that Plaintiff provide a doctor's note from her daughter's doctor in order for Plaintiff to utilize FMLA.

18. This decision to modify Plaintiff's means of utilizing FMLA Leave was effectively a denial of FMLA Leave and disability discrimination by association because the nature of her daughter's condition was not one that warranted repeated medical visits to her primary care doctor every time Plaintiff's daughter was sick. Moreover, requiring Plaintiff to bring a doctor's note in each time her child was ill created an unreasonable hardship on Plaintiff and prolonged her ability to return to work as that would require an office visit which would not be immediately available nor necessary.

19. Plaintiff's leave served the purpose of cautionary monitoring and supervision of her daughters' seizures to ensure that if and when her daughter needed medical attention resulting from a severe febrile seizure, Plaintiff would be present to provide immediate care and/or transport to medical care.

20. The manner in which Plaintiff's daughter was sick in the first place naturally varied. Many times, Plaintiff would only find out her daughter was sick when she woke her in the morning and her daughter exhibited cold symptoms. Plaintiffs prior FMLA Leave accommodation was perfectly tailored to address these exact situations where her child's temperature was likely to increase only a few hours after her work hours would typically begin.

21. Plaintiff was instead relegated to utilizing her own annual and sick leave to provide proactive care to her daughter when her daughter got sick. Eventually Plaintiff utilized all of her annual leave and Defendant required Plaintiff to take leave without pay and a full 24 hour advanced noticed.

22. Twenty-four hour advanced noticed was incompatible with the nature of the disability Plaintiff's daughter would be afflicted with when she was sick.

23. After Plaintiff was using FMLA leave for her daughter, Plaintiff noticed over time that Brown began to engage in preferential treatment of Senior Clerks and was more vocal in her approval of their work in comparison to Plaintiff's work. Plaintiff also noticed that even among the analysts, Plaintiff received little to no praise from Brown even when she was doing well at her job.

24. Plaintiff understood the difference in praise and favoritism toward the Senior Clerks by Brown stemmed from Plaintiff's repeated use of leave to care for her daughter when she was sick.

25. Godwin and Brown refused to modify the changes they made to Plaintiff's FMLA Leave requirements and on December 27, 2019 Plaintiff was constructively terminated because no parent in her position would continue to work for an employer like Defendant that intentionally and punitively made it more difficult for Plaintiff to care for her daughter whose medical condition required an adaptive work schedule given the unpredictable frequency at which a 5 year old gets a cold. There was no unreasonable hardship on Defendant for the time off that Plaintiff took to care for her daughter.

26. Godwin and Brown both knew of the nature of Plaintiff's daughters' condition and the need for her to be present to make judgment calls about her daughter's seizures when they occurred. Instead of supporting the existing accommodations that were working optimally for Plaintiff, Defendant chose to modify her leave into something that was untenable and ultimately harmful to Plaintiff's daughter in the immediate future.

27. Defendant's decision was an especially malicious interference in Plaintiff's effort to rehabilitate her daughter given that Febrile Seizures in children typically go away by the time a child turns 6 years old.

28. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

### COUNT I
### VIOLATION OF THE REHABILITATION ACT
### DISABILITY/ HANDICAP DISCRIMINATION BY ASSOCIATION

29. Paragraphs 1 through 28 are incorporated herein by reference. This is an action against Defendant for discrimination based on handicap and/or disability by association with her minor child daughter.

30. Plaintiff's daughter actively or perceptively suffered from a physical or mental disability that substantially limited one or more of Plaintiff's daughter's major life activities and/or Plaintiff has a record of such impairment in her daughter. Specifically, the medical condition of Febrile Seizures which presents in children within Plaintiff's age group and are triggered by the common cold symptom of a fever.

31. Defendant is an "employer" as the term is defined in the relevant statute and was receiving federal funds at the time of its discrimination against Plaintiff.

32. Defendant, solely because of Plaintiff's handicap/disability excluded Plaintiff's participation in, denied Plaintiff the benefits of, or subjected Plaintiff to discrimination under a program or activity as defined in the relevant statute. This was accomplished through Defendant's agents, apparent agents, and employees.

33. Defendant took action against Plaintiff because of Plaintiff's disabling condition, Alternatively, Defendant perceived Plaintiff to be disabled and took action against him as a result thereof and/or refused to reasonably accommodate him.

34. There is no legitimate reason that has been offered by Defendant nor can there be any legitimate reason for the adverse treatment of Plaintiff.

35. Defendant knew or should have known of these conditions as they were open and notorious and well known to Defendant. The adverse treatment of Plaintiff, together with the facts set forth above, were brought to the attention of Defendant and Defendant perpetuated this treatment by condoning the actions and inactions affecting Plaintiff.

36. Defendant harbored ill-motives and intent to cause disparate and retaliatory treatment of Plaintiff by forcing her to choose between providing the necessary supervision and medical attention to her daughter or her employment.

37. Defendant is responsible for the violations of Plaintiff's rights as set forth herein because it exercised control over the adverse treatment of Plaintiff. In the alternative, Defendant failed to properly supervise its employees thereby causing foreseeable harm to Plaintiff's rights set forth herein.

38. As a direct and proximate cause of Defendant's actions described above, Plaintiff has sustained damages including but not limited to mental, nervous, and emotional injury. Plaintiff has incurred additional damages including lost wages, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, and other damages. These damages have occurred in the past, are occurring at present and will continue in the future. Plaintiff is entitled to injunctive relief.

## COUNT II
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

39. Paragraphs 1 through 28 are re-alleged and are incorporated herein by reference.

40. This is an action against Defendant for retaliating against Plaintiff due to Plaintiff's use of protected leave time as set forth more fully above. This is thus both an interference and retaliation claim.

41. After taking leave for serious health conditions, Defendant harassed Plaintiff and took adverse personnel actions against Plaintiff for using leave. Defendant also interfered with Plaintiff's ability to take time off that should have been protected under the FMLA.

42. Plaintiff was denied rights and benefits conferred by the FMLA after taking protected leave. The manner of the denial of rights involved modifications to the conditions of Plaintiff's ability to utilize FMLA leave to requirement that were untenable in the face of the nature of her daughter's medical condition.

43. Defendant's violations of the FMLA were willful.

44. As a direct and proximate result of Defendants willful, wanton, and malicious acts described in part above, Plaintiff has sustained damages for the loss of employment, as well as the security and peace of mind it provided. Plaintiff has incurred damages for lost wages, and other damages attendant with the loss of his job. These damages have occurred in the past, are occurring at present and will continue in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 14th day of January 2022.

                                        Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32303
Telephone:  (850) 383-4800
Facsimile:  (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF